We'll proceed to our third argument of this morning, and it comes in Appeal 25-1361, Svoboda v. Amazon. Ms. Shuster, nice to see you. Good morning. May it please the Court, I'm Stephanie Shuster here on behalf of Amazon. The District Court certified an enormous class of Amazon customers with sizable claims that all require individualized inquiries to determine both liability and damages. This class fails Rule 23's superiority and predominance requirements in three related and reinforcing ways. First, superiority is lacking because the stakes are high on both sides of the V. The average class member has a claim for $60,000 and tens of thousands of class members have claims worth more than $100,000, all plus attorney's fees and costs. These large claims, plus low barriers to suit, give class members strong incentive and interest in litigating meritorious claims individually. Are there individual cases parallel to this one pending against Amazon? There are other BIPA cases pending against Amazon, but not about this particular technology. You brought individually challenging the VTO, what is it, virtual try-on? Virtual try-on, Your Honor. No, this is the only one. This one's been pending for some time. Thank you. At the same time, aggregating these already large claims creates an unnecessary risk of an unconstitutionally excessive damages award for Amazon. Given damages under BIPA are discretionary, and thus amounts less than the $1,000 and $5,000 awards that are authorized by the statute are permissible, why should we assume that excessive damages that you hypothesize are realistically possible? Do you really think a class member is going to walk away with a million dollars in this case, or $60,000 in this case? That's a good question, Your Honor. That is precisely what the plaintiff's theory of liability is, that these individual class members would walk away with $5,000 per use of the VTO feature, $60,000 again for hundreds of plaintiffs. It is more than a million dollars, and those are the damages that they're seeking. We have to assess whether class action is appropriate based on the claim that the plaintiff has brought. Well, could you address the point made in Murray to the effect that we should not worry at the class certification stage, at least not deny class certification based on the possibility that an unconstitutional award might eventually be imposed? The time to deal with that is at the back end. Two responses to that, Your Honor. Murray was materially distinguishable. Murray dealt with small potential recovery of $100,000 to $1,000 max per class member, unlike the large sums at issue here. The principle was stated pretty generally, though, and seems to me, at least as a judge, to make a lot of sense in the way we administer cases. Well, I think you need to read Murray, though, Your Honor, in context of the small value of the claims was important, because the practical alternative to class litigation with those small low-value claims was no litigation at all. That's not the case here. There's every incentive here for individual class members to bring their claims. And yet, none have. Correct, none have. There is a class action pending, but that is not a reason to determine that class members don't actually have an interest, again, with claims worth over a million dollars, $500,000, $100,000, that they don't have every interest in pursuing those claims on their own without the class pending. But the holding was made in the context of we're not going to say no class action because of a potential excessive damages award, because doing so now rather than on the back end means that these claims don't get litigated. That isn't a concern here precisely because of the high damages awards in this case. Murray also didn't involve the other problems with class certification that we have in our case, which on top of the high damages award is predominance issues that affect both liability and damages. As to liability, each class member will have to prove for each and every use of the VTO feature that they were located in Illinois at the time. That can't be done on a class-wide basis. It requires an individualized inquiry. Plaintiffs kind of gesture towards Amazon's data and so did the district court, but that data is not reliable for that purpose. We put in an unchallenged... Can you be as... On this point, Ms. Schuster, can you be as specific as possible with respect to what's in the record about why it is that the IP address... I think it gets overlaid with what you all call geolocational information. Sure. I think the geolocational information is just a way of estimating based on an IP address where the user is actually located because IP addresses themselves generally correlate to geography but not state lines. Okay. So what is it about the IP information and the geolocational information when you combine that with, as the district court did, the billing address information and the information that will come in time on a claims form or claims affidavit? Why is it that that gives your client pause on the B3 predominance question? Certainly. So the billing addresses don't tell you anything. They tell you where the primary billing address is associated with the user's account. That is not always associated with the user's residence, as was the case with one of the plaintiffs here. But on the IP addresses in particular, what our expert report showed, our unchallenged expert report showed, is that these are at most in guessing sort of where the... Which state the plaintiff is located. These are at most a guess that are 74% accurate of determining whether a user is within 100 kilometers of a given city. So for example, if Amazon's guess for geolocation based on IP address is Chicago, there's a 74% chance the user was in Chicago, Gary, Indiana, Kenosha, Wisconsin, or anywhere else within 100 kilometers of Chicago. So is this Christopher Stengel? Is that who you're talking about? That's correct, Your Honor. Okay. And if a claim form for somebody with an address in Chicago says, and I've never been to Indiana or Wisconsin, does that give us a little more confidence? No, because that relies on the individual say-so, as alluded to at the beginning. We call that evidence, right? Well, evidence that the defendant has a right to challenge. Yes. And that's precisely our point. So to challenge that evidence, the practical way to do that, to challenge that evidence, will require tens of thousands of individual hearings at the very least to do cross-examination.  Do you want to do that? We... Has anybody said you cannot? Well, that's our point though, Your Honor. To do that is an individualized inquiry. There are over 160,000 members of this class. We would need to do that with every single class member. And that is why we're saying that there is a predominance problem that would make a class action improper and inappropriate here. You may have a constitutional right to do that. We agree that we do, Your Honor. We certainly do. Okay. We agree that that's why the class action... And that's always going to be true in large class actions, right? That's right, Your Honor. Yes. And we count on common sense and economics to keep all that within control. But nobody is going to prohibit you from taking those depositions if you want to, right? If we're going to be allowed to do so, as again, we have a constitutional right to do so, the result is class litigation that predominates. And this isn't the type of case where common sense and economics lends itself to using sort of a sampling of data. These are class member affidavits that would be filled out based on an individual's recollection about an online shopping experience on their phone from years earlier. There isn't a statistical way, and no one has proposed one either to the district court or the plaintiffs has proposed one that provides a reliable statistical methodology from which you could do data sampling. We're talking about people's memories of events from long ago. And we, like you said, Your Honor, have a right to test that through discovery and through cross-examination. And our point isn't that we're being deprived the right to do that. It's that since we must have that right, individualized issues will predominate because there will be tens of thousands of mini-trials showing that class action isn't appropriate here. And it's unnecessary, given the high individual damages plus the strong incentives. So, you'd rather have tens of thousands of individual cases? You know that's not going to happen either. It may, Your Honor, because we have... How could that possibly happen? You know, the available statutory damages aren't sufficient to make it feasible for a consumer, you know, to pursue relief in an individual action. You know, and once you appreciate the fact that the statutory damages are discretionary, you know, both in the granting or denial and the amount awarded at that, you know, the specified statutory amounts serve as a cap. Your Honor, and so here's what we have here. We have statutory damages that, again, are high and they are on their own significant in many instances to provide sufficient incentive on their own to sue. But the Illinois General Assembly was clearly attuned to the problem of negative value suits and it crafted BIPA to provide plaintiffs with strong incentives to bring meritorious claims on their own if they chose to do so. It provided a right of action absent any actual injury. It provided a statutory damages remedy and it gave prevailing plaintiffs a right to recover their attorney's fees and all of their litigation costs. That is precisely the sort of incentives that show that a class action is not necessary. The Assembly set this up so that individual claimants could bring meritorious claims if they wanted to. The fact that they haven't may be, and we submit, is more plausibly indicative that individuals do not think that these claims are that meritorious or that strong. But that's not a reason to aggregate weak claims to potentially ruin its liability in a class action. It's a reason to allow individuals to bring these claims and control them if they want to, because on plaintiff's theory, they are so worthy and worthwhile. And to the point about discretionary damages, we agree, Judge Rovner, that damages are discretionary, but plaintiffs in the district court have ignored this fact and insist that damages can be assessed based on a simple formula, multiplying $5,000 times the number of VTO uses in Illinois. That's impossible to square with the Illinois Supreme Court's holding that these damages are discretionary rather than mandatory. The word discretionary has to mean something, and it can't mean a static formula. If it did, that's the opposite of discretion. And discretion can't mean, as plaintiffs in the district court have suggested, that courts simply have the power after the fact to reduce an unconstitutionally excessive damages award. That is a constitutional requirement. It is not an exercise of discretion. Discretion requires... it's not an unfamiliar concept in the law. It requires wide latitude to act within the bounds of reason and consider all the circumstances relevant in a particular case to an award of damages. Would you envision if you... I want to go back to the location information thing. If you... if the case remained certified and it proceeded forward and envision that you're at a trial, would one of your clients' arguments... I'm not asking you to reveal confidences or anything. It just seems to me from this expert report, one of your arguments would be they fail on... the plaintiffs fail in their effort to use the IP addresses and the geolocational information to prove a central element of their claim, that this occurred within the state of Indiana. And it's... when I... in looking at the Stengel expert report, I think the way... at least I understand the way this case has been teed up and alleged and all that, is that a lot of the use of the VTO app or software is mobile. All of it. All of it? Okay. How... okay. So would a lot of it... would a lot of it then be... do you believe a lot of it would be using the app via a cellular data connection as opposed to a broadband data connection unless you were doing it in your home? That's correct, Your Honor. Okay, and the reliability of the locational information goes down significantly, at least according to Stengel's report. Correct. If you're dealing with cellular information, it goes down to about 50% or 55%. Yep, 54% within a 100-kilometer radius on the cellular alone. Okay, and would that be... do you anticipate that would be one of the defenses that you would offer at trial that they just... they bear the burden? We don't bear the burden of coming forward with locational information for them. They're trying to use our locational information. They haven't proven an element of their claim. In the world where that's the only evidence that they have of location, that's not... Well, they're gonna combine it with the billing and then later a claims form. A claims form or in the case of the named plaintiff's deposition testimony. But again, our point is that we need to be able to challenge that deposition testimony. If it were just the data, if they said, we're gonna rely on the data, one fell swoop, I think this would be a different case, but they can't do that because the named plaintiffs themselves aren't relying on the data because they don't appear in it. Don't you have account billing information, IP address, geolocation data, class member, affidavits, discovery? Gosh. I don't know. We have account billing addresses which don't tell us anything about location and the IP addresses which tell us, again, have high error rates and often are a little better than a coin flip, Your Honor. We don't have discovery from the individual class members about their individual circumstances and to do so is precisely our point. That is the predominance problem. I see I have just a minute remaining. Could you compare the geographic issues here as they affect liability to the proof of purchase issues in Mullins against Direct Digital and other similar consumer class actions? Certainly, Your Honor. A couple of points like that. Mullins was looking at proof of purchase for a joint pain supplement, looking at individuals to identify themselves, again, just for purposes of class membership at the threshold that they purchased Well, it's obviously an essential element of liability as well. Absolutely. An essential element of liability as well. The issue there, again, not superiority, but ascertainability and class membership and what the court found is that we can have this and we can sort it out later. Now, I would submit to the court that there is something materially different between testing based on potentially, to Your Honor's earlier point, with statistical evidence about whether these individuals actually purchased the product using potentially a representative sample size of were the number of products they said that they purchased consistent with what we have about sales data. There are other ways that the court envisioned, although the Mullins court didn't get into any specificity, the Mullins just said we'll leave it for another day, but there do have to be means to test the veracity of these affidavits. What we have here is more than just an I purchased this product. It's I used it while I was in this location and I remember that for these reasons. And that's something we need to be able to test and, again, the stakes are much higher here than they were in Mullins. In Mullins you were talking about $70 per claim and here we're talking about an average of $60,000 per claim and in many cases much, much, much more. Could I ask you briefly to address the Rules Enabling Act problem that you were raising? What do you think that is? It's the flip side to the same issue. So if we're not able, if the class is structured in such a way that Amazon is not able to test the veracity of claim form affidavits and conduct these tens of thousands of individualized proceedings and is not able to raise individualized offenses based on how discretion should be exercised for damages, then you have a Rules Enabling Act problem because it abridges our ability to assert individualized... If the judge says no, you may not do that. Correct. Do we have any indication the judge would prohibit you from doing that? Well, the judge is saying that the judge seems to have assumed, Judge Alonzo seems to have assumed that using billing addresses, IP addresses, and claims form affidavits will make this a mechanical process. Where do you get that? I don't get any indication there that he intends to prohibit you from challenging or putting on any evidence you think is relevant. Correct. Again, again, it's our alternative. We will credit and we will presume that the judge intends to allow it, but that is the predominant... That seems to me what we ought to do too, rather than deny class or overrule class certification on the theory that something terrible might happen. Again, that's the alternative if you're not going to allow it. But if you are going to allow it, you walk right into the predominance problem. You can't avoid those tens of thousands of individualized inquiries. Either you have a predominance problem or you have a Rules Enabling Act problem. Either way, class certification isn't appropriate here. We're going to give you time on rebuttal. Don't worry about the clock. To Judge Hamilton's point, don't you read the district court opinion as offering you precisely that opportunity by its terms? In other words, I don't know where... I don't want to put words in your mouth, but I don't know where the fear or the worry about not having that opportunity is coming from. The district court judge expressly addressed that. So I don't know why he would address it and then somehow forget it later. Certainly, Your Honor. He addressed it by saying, yes, of course, Amazon's going to have an opportunity to test this evidence. What he didn't do is look at the implications of doing that. Our point is this. You either have this predominance problem, which he ignored, or you have a Rules Enabling Act problem. If you're going to comply with the Rules Enabling Act and give us the ability to test these claims consistent with due process, then you have, again, at least 160,000 mini-trials Or you say, as a practical matter, I know Amazon is bluffing about this because there's no way they're actually going to try to do this. But we will give them the opportunity as long as they want to. I don't think that would be an appropriate exercise of discretion for the district court to No, what the district court does is say, go ahead. Correct. And again, that's where the predominance problem lies. Rule 23B requires that individual issues not predominate. Common issues must predominate. If individualized issues do, then class certification is inappropriate under Rule 23, whether you think that the defendant may or may not do it. We will do it. I will tell you that. We will test these affidavits because this is our right to defend our claims. And doing that, again, we're talking about mini-trials for each individual class member about each use of the VTO feature. So not just one use. From what you're saying, it's not clear to me that you're going to have to get to the affidavit point if what has been represented about the unreliability of cellular based mobile connections using the VTO app. I mean, that's the point you're making. If it's 50% reliable, why do you have to get into the whole affidavit at that point? They haven't proven their claim. We agree, Your Honor. And on the merits, one of the arguments that we would make is that they haven't proven it. But let me use the named plaintiffs as an example. They, again, don't appear in our data. So you can put the data aside. According to our data, they've never used the VTO feature from Illinois once. Neither of the two of them. What they have is deposition testimony saying, well, that can't be right. I did. I did use it. I used it many times. That's the case that these individual plaintiffs are going to put on. Even with that argument and those challenges to the reliability of data, which is the argument that we're making, that's going to be the case for every individual class member. The only difference is we've been able to conduct extensive discovery of the named plaintiffs. We haven't had that opportunity with the others. And to do that creates the predominance issue. Okay. We'll give you a couple minutes on rebuttal. Thank you, Your Honor. You're welcome. Mr. Keough? Good morning. May it please the Court. First, before we get into what counsel just said, I want to address a threshold issue. Nowhere in Amazon's opening brief, reply brief, or even really today, did they ever once state the trial court abused its discretion. They don't argue once there's a legal error or clearly erroneous factual finding. The only time you find that phrase, abuse of discretion, is when they cite the standard. And even then, they don't say the trial court abused it. So did the trial court make a factual error? Clearly erroneous factual error? Did they make a legal error? Clearly, Amazon disagrees. But it's their burden to show abuse of discretion, and they never even articulated it, let alone argued it. We think that's fatal to this appeal, and it should be the end of it, for failure to carry the burden. And the reason why we submit that they didn't argue that is because this case, and the trial court's use of discretion, is in line with every other appellate and trial court's decision. Every court who's looked at BIPA has recognized the focus is on defendant's conduct. Damage's focus is on defendant's conduct. There's no individual issues. And the courts go out of their way to say that this law is almost demand certification. You don't even have an outlier here. I don't recall a single consumer law that doesn't have a minority opinion of judges going the other way, especially on certification. So, you know, I'm not saying the court rubber stamped anything, so please don't get me wrong. The trial court took pleadings, took additional authority, had oral argument, which is somewhat rare in this building, and then wrote a lengthy opinion. So, Mr. Keogh, what do you, let's assume there's either a settlement or you prevail at trial on the merits, on behalf of some named class members. What does the claim process look like, from your point of view? Well, that's the thing here, usually when we have either a settlement or trial, you get together with the defendant, and you work out these things. You have, you know, it's one of those things where... I understand. I'm asking you, what is, in substance, what does it look like? Well, I can envision even a two-tier. One, because remember, the court found the majority of the class, their billing address and delivery address matches the IP address. So maybe for that portion, they don't even need an affidavit. And, you know, maybe Amazon's going to insist on it. So we'll probably say, okay, fine. You know, and the affidavit is an accommodation to Amazon. You know, so I... Well, it's not an accommodation. They're entitled to insist on it, right? Well, I'm not sure, Your Honor, because if the information data we have is sufficient, you know, it might not be needed. But to the extent they want it, you know, we talk about the Rules of Enabling Act, but they waive that. They never brought that up before the trial court. And we brought that up in our appeal, and they basically acknowledge and apply. All of this, we're trying to look way ahead, right? We're in early stages of this case. So, they have their due process rights. They have the right to challenge claims, right? Yes. Everybody in the room, I think, understands the economic and practical pressures, but in terms of formal rights, would you agree, for example, that Amazon has a right to depose a class member? I would think on a sample basis, yes. You know, everyone... I mean, the Beaton case that this court has says, you know, fraud's not an issue, that the trial court has plenty of tools and class administration working with the class administrator. So that kind of ties into your earlier question where you can have a process where you can ask a series of questions. You can have a process where the class administrator cross-checks the information submitted on the affidavit with the delivery billing IP geolocator. I mean, really what they're saying is they want a video of Jeff Bezos and the class member next to him taking the shot. I mean, there's very few cases where you have this much data. And I want to make it one point... I understand, but let's go back to my question. Do you agree they have a right to take a class... an absent class member's deposition, if they want to, if that person is asserting a claim? I would generally agree. I don't agree there's a right to depose every single class member, Your Honor. I think the case has said you can use other mechanisms. Mullins talks about that, too, for sample data. And, you know, I mean, so that would be our first position. I wouldn't say as our fallback, if that's what the court rules, we would do that. You know, here there's a class of a couple hundred thousand. You know, it's not a large class as far as that goes. So if they wanted to depose everyone, we would do that. We wouldn't say we're not going to do that if the court awarded it. But there's other procedures before you get there. I understand there may be a lot of other practical alternatives. I'm talking about formalities, formal rights, if people want to insist on them. I don't think the rule enabling that, and mind you, we did not brief this at the trial court, requires a deposition of every single class member. And to the extent it does, we'd be, you know, we'd be set to do that. So, I don't think that's an obstacle, and I don't think I'm being clear as I don't want to see my position as something that is a barrier to certification here. If the trial court held that's the issue, then we would do that. Excuse me, please. Let's say they decide they want all 160,000 deposed. Are you ready for that? Your Honor, if that's what we had to do, we'd have to do that. I mean, luckily we have Zoom now, so we can do it in a way that would make it, you know, efficient, hopefully. But, we would prepare to, you know, do whatever it takes to proceed the class. So, I... Can I ask you a question about that geolocational? Yes, Your Honor. So, it seems like you all both agree that the statute has to operate in the state. So, it doesn't have extratoratorial effect or anything. So, one of the elements of the claim is that VTO app, or however we're calling it, was used within the state. And, it seems to me that you all are relying upon a combination and the combination is important here, of three sources of information to prove that element class-wide, if you will. One is the IP address combined with the geolocational information, two is the billing address, and three is the claims form or affidavit, whatever you want to call that. And, it's the combination of those three that, as I understand your position, you say, you know, that gets us there on that element, you know, by a preponderance. Do I understand that correctly? Yes, I would also add that there's a delivery address too. So, it's... You're not just looking at, you know, a delivery address. That's also an important factor too. What do you mean delivery address? Like, what does that mean? Where the product was delivered. Oh, yeah, like if you ordered lipstick or something, where it went? Yeah. Because sometimes, that might differ. And, one thing I want to point out here, we put it out in our brief, but, the expert report they talked about, that 74% of the data is accurate to the city. Right. And, ModiFace was 85% to the city, I think, or county. But, that is Amazon-wide. That is not our class. They never had their expert look at, here's your 170,000 people. What is it here? Yeah. So, part of what has gotten my attention here is you know, they're not under a legal obligation under BIPA or anything else to maintain IP and locational information for you all. Right? They have it. You've sought it in Discovery and there's no question it helps you to some extent in proving your claim. If it proves reliable to a certain degree that way. But, what I wondered about is was there enough grappling in the district court with the reliability or lack thereof of the geolocational information because what kept running through my mind is how are you going to prove that element class-wide? You know, you're attempting to do it on the basis of common evidence. Can you do it? Or is it more that, well, we're going to kind of get close enough because there is some reliability in it meaningful, and then when we get close enough, my words, not yours or anybody else's, the burden kind of shifts over to Amazon and they can come in and disprove it. And I'm just wondering if that's the way the litigation were to proceed, have you proven the element of your claim? Well, at certification, no. We've shown that we can prove it. I think that there's a distinction there and I'm not trying to be cute. Will those three things though, plus the delivery location, will they combine in your view to prove that? Yes, because if you look at, one of the points in your question you made is whether the court grappled with it. And the court explicitly found that for the majority of the class that the billing address and IP address matched and it was talking about reliability. So the trial court didn't ignore anything. It walked through the data, it walked through the data points they had, and it found that for the majority of the class they're more reliable. So, you know, let's take a step back here. IP addresses are used every day, actually not every day, often, in this building, criminal proceedings to show where a defendant was located to show that some criminal activity took place in between state lines across state lines. And that's to show whether they were beyond a reasonable doubt. Here we need to show by a preponderance of evidence, obviously, in our civil case. So the only evidence they have is for not our class the majority is accurate to the city. They don't say it's not accurate to the state. So they crafted a very wide report that does not address the issues in our case. So, you know, it's like smoke and mirrors here. And I think that's very important because they haven't shown it's not reliable, we've shown it is. Especially since the majority match. I'm just thinking out loud, but I would I wonder if geography is actually something that you would prove on a class-wide basis, or if that's just simply like an individual customer's proof of purchase. That's part of the individual claim. Now you'd have to prove it in a trial for some people. But what you're trying to prove on a class-wide basis is that VTO violates the Illinois Act. Whether it does or not, I have no idea. But geography is just part of an element of an individual's claim. And I think, Your Honor, the way I anticipate this happening is we would try to do both. And it kind of goes into your earlier question, and I wasn't trying to avoid the claim form, is for certain class members, it's not going to be an issue. We're going to have the billing, delivery, IP address, everything lined up. Oh. If they place the order, if they live in Chicago, they place the order while they're on vacation in Florida, there's no violation. Right? I think there would be. It's not like the Illinois residents. It's just why are they using it in Illinois? No, they're using it in Florida. Oh, I'm sorry. I thought they were on vacation in Chicago. I misunderstood the question. Correct. If they're in Florida, that would be true. And then the IP address would show that. I understand nibbling around the edges here for a tri-state area, but Florida's not going to be that issue. And one point I really want to address here is counsel said plaintiffs are not in the data. That is not true. They produced data, the class data showing plaintiffs. They supplemented and took the plaintiffs out of that. And we raised a big stink about it in trial court saying you can't just take the plaintiffs out of the class data and then do an argument. So the first production of the class data plaintiffs were in there. So I don't think they need to be. Ms. Keough, could I interrupt you with one other point that the briefing teed up in a very unilluminating way. You asserted that the defendants use the data to show the state of use. They deny it in their reply brief and I'm wondering what you're referring to for support of your assertion in your brief about defendants using the data to show the state in which the product was used. They track the state information. As part of their business records, they track the IP address as well as the separate state and there's a geolocator information state flag too. So their normal business records, they have that information. And where do we have that in our record if at all? I don't recall that site your honor. I can supplement that. I don't have the record site. The point in the record site, I would note that they have a footnote citing some website in their brief that was not in the record that wasn't addressed in the trial court. They contract as I understand it, they contract with a third party to provide the IP address connection they have. They capture that. But then they contract with a third party. I don't know the name of it. They would know the name of it. The third party comes in with the kind of locational overlay, if you will. By taking the IP address and then doing geolocating analysis. I think it's those two things that combine that's what they mean by geolocational information. I think. I think you're correct, your honor. But that's just another data point that they have and they retain in their ordinary course of business. But once again, we don't just have the IP address. We have the delivery address. We also have the former and the old ones too. We have the former addresses. We have the current addresses. We have the addresses of the time the product was used. So really one big point, though, I don't want to lose is this goes to manageability. By definition, every class member used it in Illinois. And manageability the circuit court has given much more discretion than the trial court. Because it has the tools to use, the fashion, to grapple with these issues. Bringing this up the first time in an appeal, this is not, I would submit the place for that. That is for the trial court to sit down and the party sit down and say how are we going to address this issue? Amazon, you didn't raise this before, but now you're raising it. How do we solve this issue? Let's get a class administrator in here, these experts who did notice, and let's fashion a claim form that will satisfy due process and satisfy everyone. That's how this usually works. Not after the fact, ad hoc, saying well, it could be a parade of horrors and we wanted to pose, we're Amazon, so we have money, so we're going to pose every class member, so you should decertify the class. You would never, that can't be the test. You know, no class can then be sustained if that's the test. Okay. I'm running out of time, so I'll leave the fact that the amount here is not unique. One thing I think is important is they're talking about $60,000 per class member. McGivney was $2 million per class member, and they held certification of sign. Cawthorne was $17 billion for 9,500 people. And that's $1.8 million on average, it allows to be higher. So this case is not unique, and if anything, it's on the lower end of damages. But as Judge Rovner pointed out, the court has discretion, you know, it's $1,000 to $5,000. They're stacking maximum possible damages to create a parade of horror that is not realistic. Okay, thank you very much, Mr. Keough. Ms. Schuster. You stayed a little longer with Mr. Keough. We'll give you a couple minutes. Thank you, Your Honor. I appreciate it. Just a few quick points. First, on the point that the affidavit is an accommodation to Amazon, I just want to reiterate that it is not an accommodation to Amazon. It is necessary because that geolocation data is inherently not reliable for the purpose of proving location within Illinois. And again, the named plaintiffs are a very good example of that. Counsel mentions a point not raised in his brief that the data, he says one iteration of the data produced in the district court included his clients. That's a misleading representation of the data. The original data produced was just billing addresses. It was produced later with billing addresses and IP address. By that point, the plaintiff's billing addresses had changed and none of them ever had an IP address located in Illinois. The only IP address data never reflected these plaintiffs. And so the claim form affidavit is necessary because there are going to be individuals in this class who, like plaintiffs, are not in the data itself. And even if they are, that data is unreliable as we've demonstrated through the expert. Second, the point that counsel made about there being plenty of tools to evaluate whether these claim form affidavits, these class member affidavits are accurate, it rings hollow because the only specific tool I've heard from the district court or from counsel is that it can cross-check the Amazon data. But the Amazon data is not reliable in the first instance. We've proven that and they have not brought any data to show that the opposite is true. We've shown it's not 74% accurate to a city. It's 74% accurate and that's in the best case scenario to a 100 kilometer radius of a city and that's a material difference, again, with Chicago being the prime example. And then finally, just to address one last point, the issue of geography, this isn't a question about counting up the sum of damages after liability has been established. Geography is an essential element to liability because you cannot violate FIPPA if it did not occur in Illinois. It is an essential element of the claim that has to be proven and, again, the stakes for doing so are very high and we submit that this predominance problem combined with the high value and superiority problems make this class unsuitable for questions. Can I keep you on that real quick? Absolutely. So Judge Hamilton asked a question that at least I heard in substance saying, okay, at the end of the day somebody's going to have to prove geography, but why is it necessary at the kind of class liability or at the broader liability phase, why is it necessary to think of that at that point in time as an essential element as opposed to thinking about it later as part of a proof of claim? Because it is, in fact, an essential element of the claim. As Your Honor pointed out, the parties do not dispute and the courts are unanimous. FIPPA does not have extra territorial effects. But people will come in later in securities cases, will they not? They'll come in with their trading information during a class period, but the whole liability phase of it will all be about the 10B5 elements and not transaction specific element information as to an individual plaintiff. Yeah, but we're dealing with an information privacy statute that deals with individual privacy rights and the claims are individual, they are personal to each individual plaintiff. An individual's data needs to be collected and it needs to be collected in Illinois for there to be liability. The statute is terms of individual rights. I don't understand how that's any different from, for example, securities class action claimant having to prove that she bought the security in question in a claims process or in an antitrust action a local business proves that we bought from a member of the conspiracy. It's different in the sense that in order to establish a claim, not just membership in the class, in order to establish a claim they have to prove that they used this feature in Illinois. Otherwise, it's just not actionable under BIPA. I understand your point. I don't understand why it weighs against class certification. Because this isn't as simple as a claims process where you would sort of deal with potentially in settlement or after determining liability. Liability is going to be different as to each individual claimant. The scope of liability, the number of claims Isn't that true in the securities case though? In the securities case, if I'm a member of a class and it comes down to the proof of claim phase there's liability determination against the defendant and I'm a member of a class and I come forward and I can't demonstrate that I traded during the class period. I had no transaction during the class period. I have failed at that point. I'm not going to recover a penny. That's true. As a member of a class, I have an individual 10B5 claim but I haven't proven it. I had an opportunity at the claims phase to come in. I came in with nothing. Even at the claims phase and I think this is our broader point even at the claims phase, we are going to have to put each of these individuals in the witness stand and cross examine them about where and when that they used this particular BTO tool and whether they used it within Illinois. And that is our argument. Our argument is a predominance problem. This would become an unmanageable class because of individualized issues would overwhelm the litigation of common ones. It's not simply counting noses in terms of what are common questions and what are individualized. This is a big individualized issue combined with individualized issues in terms of assessing the amount of damages once liability has been established. I think we have it. Thank you. Thank you, Ms. Schuster. Mr. Keough, thanks to you. Thanks to your colleagues as well to take the appeal under advisement.